IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GWYNNE A. WILCOX,<br> 2001 K Street, NW,<br> Washington, DC 20006,<br>   *Plaintiff*,<br><br>  v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States,<br> 1600 Pennsylvania Avenue, NW,<br> Washington, DC 20500,<br><br> and<br><br>MARVIN E. KAPLAN, in his official capacity as Chairman of the National Labor Relations Board,<br> 1015 Half Street SE,<br> Washington, D.C. 20570,<br>   *Defendants*. | Case No. _____<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

**INTRODUCTION**

  This case challenges President Trump's unprecedented and illegal removal of Gwynne A. Wilcox from her position as a duly confirmed member of the National Labor Relations Board. Ms. Wilcox is the first Black woman to serve on the Board, the first Black woman to serve as its Chair, and—if the President's action is allowed to stand—will also be the first member to be removed from office since the Board's inception in 1935.

  The President's firing of Ms. Wilcox by late-night email was a blatant violation of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, which allows the President to remove Board members only in cases of "neglect of duty or malfeasance in office, but for no other cause," and only after "notice and hearing," 29 U.S.C. § 153(a). The President's removal of Ms. Wilcox without even purporting to identify any neglect of duty or malfeasance, and without notice or a hearing,

1

defies ninety years of Supreme Court precedent that has ensured the independence of critical government agencies like the Federal Reserve. And because the removal reduced the National Labor Relations Board to just two members, it also eliminated a quorum—bringing an immediate and indefinite halt to its critical work of adjudicating labor-relations disputes.

The President's action against Ms. Wilcox is part of a string of openly illegal firings in the early days of the second Trump administration that are apparently designed to test Congress's power to create independent agencies like the Board. Although Ms. Wilcox has no desire to aid the President in establishing a test case, she is also cognizant of the fact that, if no challenge is made, the President will have effectively succeeded in rendering the NLRA's protections—and, by extension, that of other independent agencies—nugatory. As a rightful member of the Board, Ms. Wilcox accordingly seeks declaratory and injunctive relief to remedy the President's unlawful action, ensure that the Board can resume its important work, and restore the Board's congressionally mandated independence.

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1361, 1651, 2201, and 2202.

2. Venue is proper in this district under 28 U.S.C. § 1391(e).

## PARTIES

3. Plaintiff Gwynne A. Wilcox is a member of the National Labor Relations Board, duly confirmed by the U.S. Senate to a five-year term expiring in August 2028.

4. Defendant Donald J. Trump is the President of the United States and is responsible for the decision to remove Ms. Wilcox from that position. He is sued in his official capacity.

5. Defendant Marvin E. Kaplan is the Chairman of the National Labor Relations Board, in which position he oversees the administration, operation, and personnel of the Board. He is sued in his official capacity.

## STATUTORY BACKGROUND

6. Ninety years ago, Congress established the National Labor Relations Board as an independent federal agency charged with remedying the "inequality of bargaining power" between employers and employees "by encouraging … collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing." 29 U.S.C. § 151. The Board's responsibilities include the exclusive jurisdiction to protect employees from unfair labor practices and to adjudicate labor disputes. *See id.* §§ 157–60. The Board adjudicates hundreds of unfair-labor-practice charges and disputes concerning workplace elections each year from more than 30 regional offices throughout the United States.

7. Congress created the Board as an independent, quasi-judicial body consisting of five members appointed by the President "with the advice and consent of the Senate" for staggered five-year terms. 29 U.S.C. § 153(a). One member, designated by the President, serves as the Board's Chair. *Id.*

8. Congress expressly provided that the Board's members do not serve at the pleasure of the President but instead can be removed only for cause. The NLRA provides that a "member of the Board may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." *Id.*

9. Congress established these protections to ensure the Board's status as an independent and impartial adjudicative body. The independence of Board members, Congress concluded, was critical to protect them "from being subject to immediate political reactions at elections." NLRB, *1 Legislative History of the National Labor Relations Act*, at 1467 (1949). The Act's

sponsor, Senator Robert Wagner, explained that only an autonomous tribunal—"detached from any particular administration that happens to be in power"—could fairly adjudicate disputes between employers and employees. *Id.* at 1428.

10. Congress has a long history of establishing independent agencies, beginning nearly 150 years ago with the Interstate Commerce Commission. *See* Interstate Commerce Act, § 11, 24 Stat. at 383 (1887). Since then, Congress has created and fine-tuned the structures for dozens of additional agencies, including the Federal Reserve Board, whose leaders are removable only for cause. In *Humphrey's Executor v. United States*, the Supreme Court upheld the constitutionality of such statutory protections, holding that the President lacked authority to remove Commissioners of the Federal Trade Commission for reasons other than those specified by Congress. 295 U.S. 602 (1935). Congress has relied on that precedent for ninety years in structuring independent agencies, and abandoning it now could cast a cloud over a wide variety of agency decision-making.

11. Congress's decision to structure the Board as an independent agency follows directly in this well-established tradition. As Senator Wagner stated, "[t]here is no more reason why the Board should be connected with the Department of Labor than why the Federal Trade Commission should be attached to the Department of Commerce." NLRB, *1 Legislative History of the National Labor Relations Act*, at 1428.

### FACTUAL ALLEGATIONS

12. Ms. Wilcox was confirmed by the U.S. Senate as a member of the NLRB on August 4, 2021. The Senate confirmed her for a second term of five years on September 6, 2023—a term that will not end until August 27, 2028. On December 17, 2024, President Biden designated Ms. Wilcox as the Board's Chair.

13. Immediately upon taking office, President Trump designated defendant Kaplan to replace Ms. Wilcox as Chair of the Board.

14. In open disregard of the NLRB's for-cause removal provision, President Trump then removed Ms. Wilcox from her position as a member of the Board on Monday, January 27. In a late-night email sent on behalf of the President, the Deputy Director of the White House Presidential Personnel Office—the division of the White House responsible for political appointments—stated that Ms. Wilcox (whom the email incorrectly calls "Commissioners [sic] Wilcox") is "hereby removed from the office of Member[] of the National Labor Relations Board." *See* Ex. 1 (email from Trent Morse). The President's decision to remove Ms. Wilcox is unprecedented. In the 90 years since Congress passed the NLRA, no President has previously attempted to remove a member of the Board.[1]

15. Ms. Wilcox was never given a "notice and hearing" before her removal, as required by 29 U.S.C. § 153(a).

16. Rather than identifying any "neglect of duty or malfeasance in office," as required by section 153(a), the email cites the President's belief that "heads of agencies within the Executive Branch must share the objectives of [his] administration"—a blatantly political purpose that flies in the face of the NLRB's independent status. Although the email acknowledges that "the National Labor Relations Act purports to limit removal of Board members to 'neglect of duty or malfeasance in office,'" it asserts that "this limitation is inconsistent with the vesting of the executive Power in the President."

17. Ms. Wilcox has disputed the President's authority to fire her, calling the move "unprecedented and illegal." The next morning, however, the Board's Director of Admin-

---

[1] The email also states that President Trump removed the Board's General Counsel, Jennifer Abruzzo. Although the email mistakenly states that Ms. Abruzzo is subject to the same removal protections as Ms. Wilcox, the NLRA's protections apply by their terms only to a "member of the Board." 29 U.S.C. § 153(a). The President's decision to remove Ms. Abruzzo is not at issue in this case.

5

istration—who reports directly to defendant Kaplan—began the termination process, cutting off Ms. Wilcox's email access and telling her to clean out her office or that it would be cleaned out for her. The following day, the agency requested that Ms. Wilcox return her government laptop, phone, and iPad. As a result of these actions, Ms. Wilcox is unable to carry out the duties of a member of the Board.

18. Although the NLRA allows the Board to continue operating if there are vacancies, it requires at least three members for a quorum. 29 U.S.C. § 153(b). Because there were already two vacancies on the five-member Board, the President's removal of Ms. Wilcox without nominating a replacement leaves the Board with just two sitting members, effectively shutting down its operations. As a consequence, no mechanism remains for resolving labor disputes under the NLRA, and workers—who lack a private right to enforce their rights under the Act—are left without legal recourse for unfair labor practices.

## CLAIM FOR RELIEF

## VIOLATION OF THE NATIONAL LABOR RELATIONS ACT, 29 U.S.C. § 153(a)

19. Under the NLRA's plain language, Ms. Wilcox has a clear legal entitlement to retain her position as a member of the National Labor Relations Board. Section 153(a) states, in mandatory terms, that a "member of the Board may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for *no other cause*." 29 U.S.C. § 153(a) (emphasis added).

20. President Trump's removal of Ms. Wilcox as a member of the Board without purporting to identify any neglect of duty or malfeasance, and without providing notice or a hearing, is unlawful under section 153(a) and is an obvious attempt to intentionally contravene Congress's statutory scheme.

6

21. The President, however, asserts that the Act's limitations are "inconsistent with the vesting of the executive Power in the President." Because there is thus a substantial and continuing controversy between Ms. Wilcox and the defendants over the efficacy of the removal, a declaration of rights under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, is both necessary and appropriate to establish that Ms. Wilcox remains a rightful member of the Board and that the President lacks authority to remove her in contravention of the NLRA's requirements. Relief is also appropriate under the Administrative Procedure Act, 5 U.S.C. § 706.

22. Ms. Wilcox does not seek an injunction against President Trump, but asks for and is entitled to one against defendant Kaplan. Despite Ms. Wilcox's legal right to continue in the position of member of the Board, defendant Kaplan, acting in his capacity as Chair of the Board, acceded to her removal. Defendant Kaplan directly supervises the Board's Director of Administration, who carried out Ms. Wilcox's termination and made it impossible for her to continue to perform the duties of her position. Ms. Wilcox has been and continues to be irreparably harmed by defendant Kaplan's actions and is without an adequate remedy at law.

### PRAYER FOR RELIEF

The plaintiff requests that the Court:

a. Declare that Ms. Wilcox was unlawfully removed as a member of the National Labor Relations Board, in violation of the National Labor Relations Act, 29 U.S.C. § 153(a);

b. Enter an injunction against defendant Kaplan, ordering him to reinstate Ms. Wilcox as a member of the Board, including by providing her with access to government facilities and equipment, and to refrain from taking any further action to obstruct Ms. Wilcox's ability to carry out her duties;

c. Award all other appropriate relief.

Dated: February 5, 2025            Respectfully submitted,

                                                */s/ Deepak Gupta*

Deepak Gupta (D.C. Bar No. 495451)
Matthew W.H. Wessler (D.C. Bar No. 985241)
Gregory A. Beck (D.C. Bar No. 494479)
**GUPTA WESSLER LLP**
2001 K Street, NW
Washington, DC 20006
(202) 888-1741

Jennifer D. Bennett*
**GUPTA WESSLER LLP**
505 Montgomery Street
San Francisco, CA 94111
(415) 573-0335

* motion to appear *pro hac vice* forthcoming

*Attorneys for Plaintiff Gwynne A. Wilcox*