## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GWYNNE A. WILCOX,

*Plaintiff*,

*v.*

DONALD J. TRUMP, in his official
capacity as President of the United States,

and

MARVIN E. KAPLAN, in his official
capacity as Chairman of the National
Labor Relations Board,

*Defendants*.

Civil Action No. 1:25-cv-00334-BAH

## DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Defendants respectfully cross-move for summary judgment pursuant to Federal Rule of Civil
Procedure 56. In support of this motion, Defendant refers the Court to the accompanying
Memorandum in Support of Defendants' Cross-Motion for Summary Judgment and Opposition to
Plaintiffs' Motion for Summary Judgment.

Dated: February 21, 2025

Respectfully submitted,

BRETT A. SHUMATE
*Principal Deputy Assistant Attorney General*

CHRISTOPHER R. HALL
*Assistant Branch Director*

/s/ Madeline M. McMahon
MADELINE M. MCMAHON
(DC Bar No. 1720813)
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20530
Telephone: (202) 451-7722
Email: madeline.m.mcmahon@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GWYNNE A. WILCOX, | |
| *Plaintiff*, | |
| *v.* | |
| DONALD J. TRUMP, in his official capacity as President of the United States, | Civil Action No. 1:25-cv-00334-BAH |
| and | |
| MARVIN E. KAPLAN, in his official capacity as Chairman of the National Labor Relations Board, | |
| *Defendants*. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................1

BACKGROUND ................................................................................................................................2

I.      Statutory Background ...........................................................................................................2

II.     This Case ..............................................................................................................................4

LEGAL STANDARD .......................................................................................................................4

ARGUMENT .....................................................................................................................................5

I.      Restrictions on the Removal of the NLRB Members Are Inconsistent With the President's Constitutional Authority. ..................................................................................5

II.     Plaintiff Is Not Entitled to An Injunction ........................................................................10

          A.     Plaintiff has no right to reinstatement. .................................................................11

          B.     Plaintiff has not suffered an irreparable injury. ...................................................13

          C.     The balance of the equities and public interest weigh strongly in favor of the government. ............................................................................................................15

CONCLUSION ................................................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*,
  64 F.4th 1354 (D.C. Cir. 2023) ............................................................................................10

*Baker v. Carr*,
  369 U.S. 186 (1962) ...........................................................................................................12

*Berry v. Reagan*,
  No. 83-cv-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983),
  *vacated*, 732 F.2d 949 (D.C. Cir. 1983) ..................................................................12, 13, 14

*Buckley v. Valeo*,
  424 U.S. 1 (1976) .................................................................................................................7

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ...........................................................................................13

*City of Arlington v. FCC*,
  569 U.S. 290 (2013) ......................................................................................................... 7, 9

*Collins v. Yellen*,
  594 U.S. 220 (2021) .............................................................................................................8

*Davis v. Billington*,
  76 F. Supp. 3d 59 (D.D.C. 2014) .......................................................................................14

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ...........................................................................................................10

*English v. Trump*,
  279 F. Supp. 3d 307 (D.D.C. 2018) ...................................................................................14

*Farris v. Rice*,
  453 F. Supp. 2d 76 (D.D.C. 2006) .....................................................................................14

*Fibreboard Paper Prods. Corp. v. NLRB*,
  379 U.S. 203 (1964) ......................................................................................................... 3, 6

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) .....................................................................................................*passim*

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999) ...........................................................................................................12

*Harkrader v. Wadley*,
  172 U.S. 148 (1898) ...........................................................................................................12

*Hetreed v. Allstate Ins. Co.,*
   135 F.3d 1155 (7th Cir. 1998) ...................................................................................14

*Humphrey's Executor v. United States,*
   295 U.S. 602 (1935) ..................................................................................*passim*

*In re Sawyer,*
   124 U.S. 200 (1888) ...................................................................................12

*Kuretski v. Comm'r,*
   755 F.3d 929 (D.C. Cir. 2014) ......................................................................9

*Mackie v. Bush,*
   809 F. Supp. 144 (D.D.C. 1993), *vacated by Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993) ........ 13, 15

*Mallory v. Norfolk S. Ry. Co.,*
   600 U.S. 122 (2023) ....................................................................................8

*Mori v. Dep't of Navy,*
   731 F. Supp. 2d 43 (D.D.C. 2010), *appeal dismissed*, 2010 WL 5371504 (D.C. Cir. Dec. 28, 2010)....4

*Morrison v. Olson,*
   487 U.S. 64 (1988) ................................................................................. 5, 9

*Myers v. United States,*
   272 U.S. 52 (1926) ............................................................................. 5, 11, 14

*New Process Steel, L.P. v. NLRB,*
   560 U.S. 674 (2010) ...................................................................................16

*Nken v. Holder,*
   556 U.S. 418 (2009) ...................................................................................10

*NLRB v. Gissel Packing Co.,*
   395 U.S. 575 (1969) .....................................................................................3

*Parsons v. United States,*
   167 U.S. 324 (1897) ...................................................................................11

*Phelps Dodge Corp. v. NLRB,*
   313 U.S. 177 (1941) .....................................................................................7

*PHH Corp. v. Consumer Fin. Prot. Bureau,*
   881 F.3d 75 (D.C. Cir. 2018) ..........................................................................6

*Pro-Football, Inc. v. Harjo,*
   284 F. Supp. 2d 96 (D.D.C. 2003) ...................................................................4

*Sampson v. Murray,*
    415 U.S. 61 (1974) ...................................................................................................14

*Seila L. LLC v. Consumer Fin. Prot. Bureau,*
    591 U.S. 197 (2020) ...........................................................................................*passim*

*Severino v. Biden,*
    71 F.4th 1038 (D.C. Cir. 2023) .............................................................................. 5, 8

*Shurtleff v. United States,*
    189 U.S. 311 (1903) ...................................................................................................11

*Swan v. Clinton,*
    100 F.3d 973 (D.C. Cir. 1996) ...................................................................................13

*United States v. Perkins,*
    116 U.S. 483 (1886) ................................................................................................ 5, 6

*Va. Elec. & Power Co. v. NLRB,*
    319 U.S. 533 (1943) ................................................................................................ 6, 7

*Walton v. House of Representatives,*
    265 U.S. 487 (1924) ...................................................................................................12

*White v. Berry,*
    171 U.S. 366 (1898) ...................................................................................................12

*Wiener v. United States,*
    357 U.S. 349 (1958) ........................................................................................... 11, 14

**STATUTES**

5 U.S.C. § 1201 ................................................................................................................6

5 U.S.C. § 1204 ................................................................................................................6

29 U.S.C. §§ 151 *et seq.* ..................................................................................................2

29 U.S.C. § 153 ...............................................................................................2, 3, 5, 10

29 U.S.C. § 154 ...............................................................................................................3

29 U.S.C. § 156 ........................................................................................................... 3, 7

29 U.S.C. § 159 ........................................................................................................... 3, 7

29 U.S.C. § 160 ....................................................................................................2, 3, 6, 7

29 U.S.C. § 161 ...............................................................................................................3

**RULES**

Fed. R. Civ. P. 56 ...................................................................................................................4

**REGULATIONS**

29 C.F.R. § 102.35 ...............................................................................................................2

29 C.F.R. § 102.46 ...............................................................................................................2

29 C.F.R. § 102.48 ...............................................................................................................2

29 C.F.R. § 102.64 ...............................................................................................................3

29 C.F.R. § 102.67 ...............................................................................................................3

**U.S. CONSTITUTION**

U.S. Const. art. II, § 1 ................................................................................................... 1, 5, 9

U.S. Const. art. II, § 2 ................................................................................................... 6, 13

U.S. Const. art. II, § 3 ................................................................................................. 1, 5, 16

**OTHER AUTHORITIES**

*About NLRB*, NLRB National Labor Relations Board,
    https://www.nlrb.gov/about-nlrb/who-we-are/the-board ..................................................14

NLRB Casehandling Manual, Part One § 10268.1 (Jan. 2025),
    https://www.nlrb.gov/guidance/key-reference-materials/manuals-and-guides................................2

**INTRODUCTION**

The Constitution vests the entirety of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 1, cl. 1; *id.* § 3.  That executive power encompasses the authority to remove those who aid the President in carrying out his duties.  On January 28, 2025, the President exercised this power when he removed Plaintiff Gwynne Wilcox from her position as a Member of the National Labor Relations Board (the "Board" or "NLRB"), an executive branch agency that performs quintessentially executive functions.  Plaintiff now challenges her removal, seeking an order that would require her to be reinstalled to her former principal office on the Board.  But because she cannot satisfy the requirements necessary to obtain this extraordinary relief, the Court should deny her request.

The Supreme Court has recently reaffirmed the President's power to "remove—and thus supervise—those who wield executive power on his behalf."  *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020).  As described further below, the Board wields substantial executive power.  It adjudicates disputes over unfair labor practices, has the authority to order a host of remedies, and can seek to enforce compliance with those orders.  It can conduct investigations and seek injunctive relief in federal court.  And it has broad rulemaking authority to promulgate regulations "as may be necessary" to carry out its statutory mandate.  The Board's Members must therefore be removable at will to ensure democratic accountability.  For similar reasons, the narrow exception to the President's removal power outlined in *Humphrey's Executor*—which upheld removal protections for multimember bodies with "quasi-judicial" or "quasi-legislative" functions that exercise no executive power—does not apply.

Plaintiff also fails to meet the additional factors that would entitle her to an injunction.  Plaintiff's removal deprives her of employment and salary, but such consequences ordinarily do not amount to *irreparable* injury, as the traditional remedy for such claims has been an award of back pay at the end of the case.  By contrast, an order requiring the President to reinstate a person he has chosen to remove from office would be an extraordinary intrusion on the executive branch.  And, because

1

the government is likely to prevail in its contention that Plaintiff's removal was lawful, reinstating Plaintiff to her prior position would jeopardize any actions the NLRB takes in the meantime.

For all of these reasons, the Court should enter summary judgment in favor of Defendants.

## BACKGROUND

### I.    Statutory Background

The National Labor Relations Board is an executive branch agency that was created by the National Labor Relations Act ("NLRA" or "the Act"), 29 U.S.C. §§ 151 *et seq.* The Board comprises five members, appointed by the President with the advice and consent of the Senate, who serve staggered terms of up to five years. *Id.* § 153(a). The Act gives the Board broad powers to "prevent any person from engaging in any unfair labor practice . . . affecting commerce." *Id.* § 160(a). The Act provides that Board members may be removed only "for neglect of duty or malfeasance in office." *Id.* § 153(a).

Under Section 10 of the NLRA, the Board has final authority to adjudicate allegations that an employer or union has committed an unfair labor practice ("ULP"). *Id.* § 160. When such an allegation is made, the NLRB's General Counsel can issue a complaint and a notice of hearing before the Board or an ALJ. NLRB Casehandling Manual, Part One § 10268.1 (Jan. 2025), https://www.nlrb.gov/guidance/key-reference-materials/manuals-and-guides. ALJs generally oversee the development of an administrative record and ultimately issue a "proposed report, together with a recommended order" to the Board. 29 U.S.C § 160(c); *see generally* 29 C.F.R. § 102.35(a). Once an ALJ issues a decision and recommended order, parties may file "exceptions" on any contested issue, asking the Board to rule upon the matter. *Id.* § 102.46(a). After any timely exceptions are filed, the Board will consider and issue a final decision and order, either adopting the ALJ's decision with or without modifications, or issuing its own final decision, as necessary. 29 U.S.C. § 160(c); 29 C.F.R. § 102.48(b). In doing so, the Board is not bound to accept either the ALJ's findings of fact or conclusions of law. 29 U.S.C. § 160(c). Indeed, the Board has explicit statutory authority to take additional evidence upon notice to the parties. *Id.* The Board can also issue subpoenas requiring the

testimony of witnesses or production of evidence.  *Id.* § 161(1).

　　If the Board finds that "any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue . . . an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this Act."  *Id.* § 160(c).  The Board's power to issue remedies—which includes any "affirmative action[s]" that "will effectuate the policies of" the Act—is "a broad discretionary one, subject to limited judicial review."  *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 215-16 (1964).  The Board can order backpay and reinstatement, but it also has authority to issue a wide range of nonmonetary relief, including remedial bargaining orders compelling employers to bargain with unions based on union authorization cards from a majority of employees rather than an election.  *See NLRB v. Gissel Packing Co.,* 395 U.S. 575 (1969).  After it issues an order, the Board has the power to seek enforcement of its order in federal court.  29 U.S.C. § 160(e).  Further, the Board is authorized to request temporary injunctive relief, when appropriate, in federal district court.  *Id.* § 160(j).

　　The Board also has the statutory authority to conduct and certify the outcome of union-representation elections under Section 9 of the Act.  *Id.* § 159.  The Board has express statutory authority to investigate whether a proposed bargaining unit of employees wishes to select a union as representative.  *Id.* § 159(c); 29 C.F.R. § 102.64(a).  The Board can then hold a hearing, determine whether the proposed unit is "appropriate for the purposes of collective bargaining," 29 U.S.C. § 159(b), and issue orders pursuant to this provision.  *Id.* § 159(c).[1]

　　The Board possesses other significant powers.  It is authorized to promulgate "such rules and regulations as may be necessary" to carry out its statutory mandate.  *Id.* § 156.  It also has independent litigating authority to send its own attorneys to "appear for and represent the Board in any case in court."  *Id.* § 154(a).

---

[1] Generally, the Board delegates this authority to NLRB Regional Directors, 29 U.S.C. § 153(b), but the Board retains the authority to "review any action of a Regional Director delegated to him/her" in a representation case.  29 C.F.R. § 102.67(c).

II.    **This Case**

Plaintiff was confirmed by the U.S. Senate as a member of the NLRB on August 4, 2021. Compl. ¶ 12.  The Senate confirmed her for a second term on September 6, 2023.  *Id.*  On December 17, 2024, President Biden designated Plaintiff as the Board's Chair.  *Id.*

On January 20, 2025, the President designated Marvin Kaplan to replace Plaintiff as the Board's chair.  The White House, *President Trump Designates Chairmen and Acting Chairmen* (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/designation-of-chairmen-and-acting-chairmen/.  On January 27, 2025, the Deputy Director of the White House Presidential Personnel Office emailed Plaintiff informing her that the President was removing her as a Member of the Board. *Id.* ¶ 14.

The next week, on February 5, 2025, Plaintiff filed suit, challenging her removal.  *See generally* Compl.  Plaintiff filed a motion for summary judgment on February 10, 2025.  Pl.'s Mot. for Expedited Summ. J. ("Pl.'s Mot."), ECF No. 10.  For the following reasons, the Court should deny Plaintiff's motion for summary judgment and enter summary judgment in favor of Defendants.

## LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment."  *Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96, 112 (D.D.C. 2003) (citation omitted).  Rather, the dispute must regard a question of fact that is material, meaning that it is "capable of affecting the substantive outcome of the litigation."  *Id.* That is determined by "look[ing] to the substantive law on which each claim rests."  *Mori v. Dep't of Navy*, 731 F. Supp. 2d 43, 45 (D.D.C. 2010), *appeal dismissed*, 2010 WL 5371504 (D.C. Cir. Dec. 28, 2010).  The dispute must also be genuine, meaning that it is "supported by sufficiently admissible evidence such that a reasonable trier-of-fact could find for the nonmoving party."  *Pro-Football*, 284 F. Supp. 2d at 112.

4

## ARGUMENT

**I.     Restrictions on the Removal of the NLRB Members Are Inconsistent With the President's Constitutional Authority.**

Plaintiff alleges that the President did not validly remove her from office because members of the National Labor Relations Board may be removed only for "neglect of duty or malfeasance in office." 29 U.S.C. § 153(a).  But that restriction on the removal of principal officers—officers who lead a freestanding component of the Executive Branch and exercise executive power—is inconsistent with the Constitution.  The Constitution vests the executive power in the President alone, and requires that he be able to remove Board members at will.

**1.**  The Constitution vests the entirety of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 1, cl. 1; *id.* § 3; *see also Severino v. Biden*, 71 F.4th 1038, 1043-44 (D.C. Cir. 2023).  "[A]s a general matter," the executive power encompasses "the authority to remove those who assist [the President] in carrying out his duties."  *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513-14 (2010).  Without such power, the President would be unable to control those who aid him in executing the laws and "could not be held fully accountable for discharging his own responsibilities."  *Id.* at 514.

For nearly a century, the Supreme Court has repeatedly reaffirmed "[t]he President's power to remove—and thus supervise—those who wield executive power on his behalf."  *Seila Law*, 591 U.S. at 204 (citing *Myers v. United States*, 272 U.S. 52 (1926)).  The Supreme Court has recognized "only two exceptions to the President's unrestricted removal power."  *Id.*  First, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court held that Congress could impose for-cause removal restrictions on "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power."  *Seila Law*, 591 U.S. at 216.  Second, in *Morrison v. Olson*, 487 U.S. 64 (1988), and *United States v. Perkins*, 116 U.S. 483

(1886), the Court recognized an exception "for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 591 U.S. at 218. Those exceptions represent the "outermost constitutional limits of permissible congressional restrictions on the President's removal power" under current precedent. *Id.* (quoting *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 196 (D.C. Cir. 2018) (Kavanaugh, J., dissenting)).

    **2.** Members of the NLRB do not fit within either of these exceptions. They are not inferior officers with narrowly defined duties; to the contrary, they are principal officers appointed by the President with Senate confirmation, *see* U.S. Const. art. II, § 2, cl. 2; 5 U.S.C. § 1201, who oversee their own department and are not subservient to any other principal officer, *see* 5 U.S.C. § 1204. *See also Free Enter. Fund*, 561 U.S. at 511 (explaining that a department "is a freestanding component of the Executive Branch, not subordinate to or contained within any other such component"). Nor does the *Humphrey's Executor* exception apply. As the Supreme Court made clear in *Seila Law*, that exception is limited to "multimember bodies with 'quasi-judicial' or 'quasi-legislative' functions" that exercise no executive power. *Seila Law*, 591 U.S. at 216-17 (quoting *Humphrey's Executor*, 295 U.S. at 632). That narrow exception does not encompass the NLRB, which wields "substantial executive power." *Id.* at 218.

    First, the NLRB has the authority to issue final orders that affect the obligations and rights of parties. *See* 29 U.S.C. § 160(b)-(c); *see also Seila Law*, 591 U.S. at 219 (describing as an example of "executive power" the agency's ability to "unilaterally issue final decisions awarding legal and equitable relief in administrative adjudications."). Specifically, the Board adjudicates complaints alleging unfair labor practices, and when it finds such a practice has occurred, has the authority to order a broad range of remedies, including—but not limited to—"reinstatement" and "back pay." 29 U.S.C. § 160(b)-(c); *see also Fibreboard Paper Prods.*, 379 U.S. at 216 (describing Board's power to "devis[e] remedies" as "a broad discretionary one, subject to limited judicial review"); *Va. Elec. & Power Co. v.*

*NLRB*, 319 U.S. 533, 539 (1943) (explaining that the Board "has wide discretion in ordering affirmative action; its power is not limited to the illustrative example of one type of permissible affirmative order, namely, reinstatement with or without back pay."); *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 188 (1941) (holding that the Board is empowered to order remedies that "will effectuate the policies of this Act"). These adjudications "are exercises of—indeed under our constitutional structure they *must be* exercises of—the executive Power." *Seila Law*, 591 U.S. at 216 n.2 (quoting *City of Arlington v. FCC*, 569 U.S. 290, 305 n.4 (2013)); *see also id.* at 219 (explaining that issuing unilateral decisions is exercising executive power).

Second, the NLRB has robust "enforcement authority" that includes the power to seek monetary and other remedies "against private parties on behalf of the United States in federal court—a quintessentially executive power not considered in *Humphrey's Executor*." *Id.* The Board can seek injunctive relief in federal court when it deems temporary relief necessary during the pendency of an administrative proceeding. 29 U.S.C. § 160(j). It can issue subpoenas. *Id.* § 160(l). And, once it has determined an unfair labor practice has occurred and ordered appropriate relief, the Board may petition for enforcement of its order in a court of appeals. *Id.* § 160(e). The Board can conduct investigations pursuant to its authority to oversee and certify union-representation elections. *Id.* § 159(c). Furthermore, the Board has independent litigating authority to send its own attorneys (not Department of Justice attorneys) to "appear for and represent the Board in any case in court." *Id.* § 154(a); *see also Buckley v. Valeo*, 424 U.S. 1, 138-40 (1976) (recognizing interpreting and enforcing law through litigation as executive function).

Third, the NLRB possesses the power to promulgate "such rules and regulations as may be necessary" to carry out its statutory mandate. 29 U.S.C. § 156. Those rules govern employer-employee relations and thus affect a "major segment of the U.S. economy." *Seila Law*, 591 U.S. at 208. Because "interpreting a law enacted by Congress to implement the legislative mandate is the very essence of

execution of the law," an agency "empowered to issue a 'regulation or order' . . . clearly exercises executive power." *Collins v. Yellen*, 594 U.S. 220, 254 (2021) (cleaned up).

In short, the NLRB wields significant executive power and must be accountable to the President through the removal power. *See Seila Law*, 591 U.S. at 204 ("The President's power to remove—and thus supervise—those who wield executive power on his behalf follows from the text of Article II[.]").

**3.** Plaintiff's contrary contention rests largely on an overbroad reading of *Humphrey's Executor* and the cases that followed. Plaintiff seeks to stretch them beyond their facts to reach a Board that exercises substantial executive power. The Supreme Court in *Seila Law* made clear, however, that neither *Humphrey's Executor* nor its progeny extends so far. After *Seila Law*, "only a very narrow reading of those cases is still good law" and "little to nothing is left of the *Humphrey's* exception to the general rule that the President may freely remove his subordinates." *Severino*, 71 F.4th at 1050 (Walker, J., concurring).[2]

In *Humphrey's Executor*, the Supreme Court upheld the constitutionality of a provision prohibiting removal of Federal Trade Commissioners absent "inefficiency, neglect of duty, or malfeasance in office." 295 U.S. at 622. Despite reaffirming *Myers*'s then-recent holding that the President has "unrestrictable power . . . to remove purely executive officers," *id.* at 632, *Humphrey's Executor* concluded that *Myers* did not control because the FTC Commissioner at issue was "an officer who occupies no place in the executive department and who exercises no part of the executive power vested by the Constitution in the President," *id.* at 628. Instead, *Humphrey's Executor* understood the

---

[2] While the government acknowledges that whatever little remains of *Humphrey's Executor* is binding on this Court until overturned by the Supreme Court, *see Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023), it preserves the argument that *Humphrey's Executor* was wrongly decided. *See, e.g., Seila Law*, 591 U.S. at 239-51 (Thomas and Gorsuch, JJ., concurring in part) (advocating for the Court to "reconsider *Humphrey's Executor in toto*").

FTC to be "an administrative body" that "carr[ied] into effect legislative policies" and "perform[ed] other specified duties as a legislative or as a judicial aid." *Id.* Those duties, according to the Court, "c[ould ]not in any proper sense be characterized as an arm or an eye of the executive." *Id.* The Court thus understood the FTC not to be exercising executive power at all but rather to "act[] in part quasi legislatively and in part quasi judicially." *Id.* On that understanding, *Humphrey's Executor* found no constitutional problem with Congress's restriction on the removal of FTC Commissioners.

But *Humphrey's Executor* rested on a fiction, and its reasoning has since been "repudiated" by the Supreme Court. *Seila Law*, 591 U.S. at 239 (Thomas, J., concurring in part). As early as *Morrison*, the Supreme Court retreated from *Humphrey's Executor*'s "quasi-legislative" or "quasi-judicial" rationale, noting that "it is hard to dispute that the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree." 487 U.S. at 689 n.28, 691; *see also Kuretski v. Comm'r*, 755 F.3d 929, 939-45 (D.C. Cir. 2014) (holding that the Tax Court exercises executive, not judicial, power). And *Seila Law* observed that *Humphrey's Executor*'s "conclusion that the FTC did not exercise executive power has not withstood the test of time." 591 U.S. at 216 n.2; *see also Arlington*, 569 U.S. at 304 n.4 (noting that agencies may engage in activities that "take 'legislative' and 'judicial' forms, but [those activities] are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power'") (quoting U.S. Const. art. II, § 1, cl. 1)).

Plaintiff's insistence that the NLRB is "governed by five members serving staggered terms," Pl.'s Mot. at 9, is thus beside the point. The Board exercises executive authority, *supra* p. 6-8, and is therefore not comparable to the FTC as understood by the Supreme Court in *Humphrey's Executor*. *See Humphrey's Executor*, 295 U.S. at 628 (describing FTC Commissioner as officer "who exercises no part of the executive power"). As *Seila Law* made clear, the *Humphrey's Executor* exception applies only to

a multimember body that "was said not to exercise *any* executive power," *Seila Law*, 591 U.S. at 216 (emphasis added), which cannot be said of the NLRB.

Nor does the fact that the President has "additional opportunities to shape the agency's leadership and agenda," Pl.'s Mot. at 9, compensate for the President's inability to control the Board members through removal.  Even the ability to assert "[b]road power" over the functions of officers "is not equivalent to the power to remove Board members."  *See Free Enter. Fund*, 561 U.S. at 504 (making point in context of inferior officers).  What's more, the Act imposes even more stringent restrictions on the President's removal power than in *Humphrey's*, aggravating the Article II violation. While the statute in *Humphrey's Executor* provided that the President could remove FTC members "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Executor*, 295 U.S. at 620, the Act provides that the President may remove NLRB members "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).  The Act does not mention "inefficiency," presenting "an even more serious threat to executive control than an 'ordinary' dual for-cause standard."  *Free Enter. Fund*, 561 U.S. at 502-03; *see also id.* at 503 (invalidating the "unusually high standard that must be met before Board members may be removed.").

## II.    Plaintiff Is Not Entitled to An Injunction.

To establish her entitlement to a permanent injunction, Plaintiff must demonstrate: "'(1) that [she] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).  "When the defendant is the government, factors (3) and (4) merge." *Id.* (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  Plaintiff has not established any of these factors.

**A. Plaintiff has no right to reinstatement.**

This Court lacks the power to issue any order reinstating a principal executive officer removed by the President. When executive officers have challenged their removal by the President, they have traditionally sought back pay, not reinstatement. *See Wiener v. United States*, 357 U.S. 349, 350 (1958) (suit "for recovery of his salary"); *Humphrey's Executor*, 295 U.S. at 612 (suit "to recover a sum of money alleged to be due . . . for salary"); *Myers*, 272 U.S. at 106 (suit "for his salary from the date of his removal"); *Shurtleff v. United States*, 189 U.S. 311, 318 (1903) (suit "for salary"); *Parsons v. United States*, 167 U.S. 324, 326 (1897) (suit "for salary and fees").[3] That rule reflects the obvious Article II problems that arise if a court attempts to reinstate—that is, reappoint—a principal executive officer removed by the President. The President cannot be compelled to retain the services of a principal officer whom he no longer believes should be entrusted with the exercise of executive power.

Indeed, many members of the First Congress argued against requiring the Senate's advice and consent for removals precisely because of the risk that such a procedure would require the President to retain someone he had sought to remove. As Representative Benson observed: "If the Senate, upon its meeting, were to acquit the officer, and replace him in his station, the President would then have a man forced on him whom he considered as unfaithful." *Myers*, 272 U.S. at 124 (citation omitted). Representative Boudinot argued: "But suppose [the Senate] shall decide in favor of the officer, what a situation is the President then in, surrounded by officers with whom, by his situation, he is compelled to act, but in whom he can have no confidence." *Id.* at 131-32 (citation omitted). And Representative Sedwick asked rhetorically: "Shall a man under these circumstances be saddled upon the President, who has been appointed for no other purpose but to aid the President in performing certain duties? Shall he be continued, I ask again, against the will of the President?" *Id.* at

---

[3] Plaintiff may respond by arguing that the officers in *Myers* and *Humphrey's Executor* had died. But Myers and Humphrey were, of course, alive at the time of their removals, yet neither sought an injunction restoring him to office. Each waited, let back-pay claims accumulate, and eventually asserted those claims in court, directly or through an executor. Myers was removed in February 1920, sued for back pay in April 1921, and was later succeeded by his administratrix. *Myers*, 272 U.S. at 106, 108. And Humphrey's executor sought salary due "from October 8, 1933, when the President undertook to remove him from office, to the time of his death on February 14, 1934." *Humphrey's Executor*, 295 U.S. at 612.

132 (citation omitted).  The injunction Plaintiff seeks raises just this problem.

An injunction would also exceed the scope of this Court's equitable powers.  A federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity."  *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999).  Reinstatement of a public official is not such a remedy.  "It is . . . well settled that a court of equity has no jurisdiction over the appointment and removal of public officers."  *In re Sawyer*, 124 U.S. 200, 212 (1888).  Instead, "[t]he jurisdiction to determine the title to a public office belongs exclusively to the courts of law," for instance through suits for back pay.  *Id.*  Thus, "the power of a court of equity to restrain by injunction the removal of a [public] officer has been denied in many well-considered cases."  *Id.*; *see, e.g.*, *Baker v. Carr*, 369 U.S. 186, 231 (1962) (decisions that "held that federal equity power could not be exercised to enjoin a state proceeding to remove a public officer" or that "withheld federal equity from staying removal of a *federal* officer" reflect "a traditional limit upon equity jurisdiction"); *Walton v. House of Representatives*, 265 U.S. 487, 490 (1924) ("A court of equity has no jurisdiction over the appointment and removal of public officers."); *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898) ("[T]o sustain a bill in equity to restrain . . . the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the government."); *White v. Berry*, 171 U.S. 366, 377 (1898) ("[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another.").

"Perhaps the most telling indication of the severe constitutional problem with the [remedy] is the lack of historical precedent for [it]," *Free Enter. Fund*, 561 U.S. at 505 (citation omitted), and there is no historical precedent for reinstatement.  At most, a district court in 1983 effectively reinstated removed members of the multimember U.S. Commission on Civil Rights because that court believed that the commission functioned as a "legislative agency" whose "only purpose" was "to find facts which [could] subsequently be used as a basis for legislative or executive action"—not to exercise any executive power in its own right.  *Berry v. Reagan*, No. 83-cv-3182, 1983 WL 538, at *2 (D.D.C. Nov. 14, 1983) (citations omitted), *vacated*, 732 F.2d 949 (D.C. Cir. 1983).  That is no support for Plaintiff's insistence that an agency head whom the President has fired must keep exercising Article II powers.

Plaintiff may contend that the longstanding rule preventing a court from enjoining the President does not apply because she seeks an injunction against only Chairman Kaplan, not the President. *See* Compl. ¶ 22. But the President is the "only official with the statutory and constitutional authority to appoint, remove, and supervise" agency heads. Order at 6 n.2, *Dellinger v. Bessent*, No. 25-5028 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting); *see also* U.S. Const. art. II, § 2, cl. 2 (vesting authority to appoint principal officers in President alone). Therefore, any relief ordering the "reinstate[ment]" of Plaintiff "as a member of the Board," Compl., Prayer for Relief ¶ b.—what Plaintiff seeks here—would prevent the President from exercising his lawful Article II authority to select Members of his choosing. Whether the order is expressly directed at the President or not, Supreme Court precedents reinforce that courts lack power to issue any order reinstating a principal executive officer removed by the President.[4]

### B. Plaintiff has not suffered an irreparable injury.

Plaintiff can show neither that her injury is irreparable nor that monetary damages in such as backpay are inadequate compensation for any injury. Plaintiff's claimed injury is her "unlawful removal from office by the President," which she contends is "irrevocably disruptive" to her. Pl.'s Mot. at 10-11 (quoting *Berry*, 1983 WL 538, at *5, and *Mackie v. Bush*, 809 F. Supp. 144, 146 (D.D.C. 1993), *vacated by Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993)). That claim does not meet the "high standard for irreparable injury," *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)—a standard that is particularly rigorous in cases involving the government, given that the "[g]overnment has traditionally been granted the widest latitude in the dispatch of its own internal affairs." *Sampson v. Murray*, 415 U.S. 61, 83 (1974) (citation omitted).

---

[4] *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) does not compel a contrary result. In *Swan*, the D.C. Circuit held only that the plaintiff, a former member of the National Credit Union Administration who had been removed by President Clinton, had *standing* to challenge his removal because his injury could be redressed by the actions of subordinate officials. *Id.* at 978-81; *see also id.* at 980-81 ("[W]e hold that the partial relief Swan can obtain against subordinate executive officials is sufficient for redressability, even recognizing that the President has the power, if he so chose, to undercut this relief."). Standing is not at issue in this case, and *Swan* expressly declined to decide whether courts have the authority to order reinstatement as a remedy, noting that it was not "determining whether we can order more complete relief[.]" *Id.* at 981. For the reasons stated, a court cannot do so.

The harm Plaintiff claims amounts to a loss of position. Although Plaintiff's removal deprives her of her employment and salary, such consequences ordinarily do not amount to irreparable injury, "however severely they may affect a particular individual." *Id.* at 92 n.68. To the contrary, numerous courts in this circuit and others have held that loss of employment is not irreparable injury—in part because it can be remediated through back pay and other equitable remedies. *See, e.g.*, *Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155, 1158 (7th Cir. 1998); *Davis v. Billington*, 76 F. Supp. 3d 59, 65-66 (D.D.C. 2014) (collecting cases); *Farris v. Rice*, 453 F. Supp. 2d 76, 79-80 (D.D.C. 2006) ("cases are legion holding that loss of employment does not constitute irreparable injury" given "court's equitable powers to remedy for loss in employment through, for example, back pay"). Accordingly, when principal officers have been removed from their posts, they generally have challenged that removal in suits for back pay. *See Humphrey's Executor*, 295 U.S. at 612 (challenge sought "to recover a sum of money alleged to be due"); *Myers*, 272 U.S. at 106 (same); *Wiener*, 357 U.S. at 349-51 (same).

Plaintiff nonetheless contends that her "unlawful removal from office by the President" is an "'evident' irreparable injury," citing *Berry v. Reagan*. Pl.'s Mot. at 11. But *Berry* described the removal of the officers at issue there as evidently irreparable for reasons that do not apply here. In *Berry*, President Reagan removed several members of the Commission on Civil Rights, an action that left the Commission without a quorum and meant that it could not complete a report it was statutorily required to complete by a date certain. 1983 WL 538, at *1, *5. This "obviously disruptive effect" on the functioning of the Commission was irreparable because it would prevent the Commission from *ever* completing its statutory mandate, given that the Commission was set to expire. *Id.* at *5. Plaintiff and the NLRB are differently situated; the NLRB will not cease to exist and can resume its function upon the resumption of a quorum—which could be restored by the appointment and confirmation of a Board member to any of the three vacant seats. *See About NLRB*, NLRB National Labor Relations Board, https://www.nlrb.gov/about-nlrb/who-we-are/the-board (last visited Feb. 20, 2025) (listing only two Board members); *see also English v. Trump*, 279 F. Supp. 3d 307, 334-35 (D.D.C. 2018) (distinguishing *Berry* from case in which plaintiff sought to affirm her entitlement to role as Acting Director of CFPB). *Mackie v. Bush*, 409 F. Supp. 144 (a decision likewise vacated by the Court of

Appeals, *see Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993)), is also distinguishable. There, the district court entered an injunction preventing the removal of the governors *before* their removal was effectuated, *id.* at 148; it did not purport to reinstate an officer who had already been removed, the far more intrusive step that Plaintiff asks this Court to take here.

To the extent the harm Plaintiff asserts is harm to the NLRB, *see* Pl.'s Mot. at 11, that assertion is misplaced. The contention that denying her relief would deprive the NLRB of the inability to fulfill its mandate is both incorrect—the NLRB's quorum could be restored through the appointment and confirmation of a different individual to a different vacant seat—and merely a repackaging of Plaintiff's contention that she is the best person for the position and that the President had no sound reason for removing her—*i.e.*, that a Board with Plaintiff as a member would better serve the agency's mission than one without her. That is the President's prerogative to determine.

### C.    The balance of the equities and public interest weigh strongly in favor of the government.

The balance of the equities and public interest weigh strongly against Plaintiff's reinstatement as a member of the NLRB. Because the NLRB is an executive agency exercising executive authority, an injunction functionally reinstating one of its principal officers would raise grave separation-of-powers concerns and work a great and irreparable harm to the Executive. The President cannot be compelled to retain the services of a principal officer whom the President no longer believes should be entrusted with the exercise of executive power. Such a remedy would undermine the accountability of the Executive Branch instilled by the Constitution. The President "is elected by the entire Nation" and all executive officers "remain[] subject to the ongoing supervision and control of the elected President." *Seila Law*, 591 U.S. at 224. Adding additional exceptions to that constitutional rule—and then reinstating principal officers subject to those additional exceptions—"heightens the concern that" the Executive Branch "may slip from the Executive's control, and thus from that of the people." *Free Enter. Fund*, 561 U.S. at 499.

Conversely, the public interest would not be served by reinstating Plaintiff. Plaintiff contends that her reinstatement would benefit the public because it would provide "clarity" and allow the Board

to resume its functions.  Pl.'s Mot. at 12-13.  But, as discussed above, the NLRB's ability to resume its functions could be accomplished by other means—namely, the appointment of a different individual to one of the two other Board vacancies.  And the public would be better served by the appointment of a principal officer who holds the President's confidence and can effectively serve him in executing his duties as Chief Executive than by Plaintiff's reinstatement.

Moreover, reinstating Plaintiff would not immediately provide the "clarity" Plaintiff claims.  To the contrary, a district court order reinstating Plaintiff would cause further confusion.  Because the government is likely to succeed in affirming the constitutionality of Plaintiff's removal on further review, *see, e.g.*, *Seila Law*, 591 U.S. at 239-51 (Thomas and Gorsuch, JJ., concurring in part) (advocating for the Court to "reconsider *Humphrey's Executor in toto*"), any actions the NLRB takes in the meantime will be called into question and potentially voidable.  *See New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 688 (2010) (holding Board cannot operate with quorum less than three).  And the need for the Board to reconsider those cases may interfere with its ability to timely process other pending cases.  Thus, Plaintiff's claimed equities cannot outweigh the grave and unprecedented harm an injunction would cause to the separation of powers and the President's authority to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3.

## CONCLUSION

For all of these reasons, the Court should grant Defendants' cross-motion for summary judgment, deny Plaintiff's motion for summary judgment, and enter summary judgment in favor of Defendants.

Dated: February 21, 2025                    Respectfully submitted,

                                            BRETT A. SHUMATE
                                            *Principal Deputy Assistant Attorney General*

                                            CHRISTOPHER R. HALL
                                            *Assistant Branch Director*

                                            */s/ Madeline M. McMahon*
                                            MADELINE M. MCMAHON
                                            (DC Bar No. 1720813)

*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 451-7722
Email: madeline.m.mcmahon@usdoj.gov

*Counsel for Defendants*

17