IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GWYNNE A. WILCOX,<br><br>*Plaintiff,*<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States,<br><br>and<br><br>MARVIN E. KAPLAN, in his official capacity as Chairman of the National Labor Relations Board,<br><br>*Defendants.* | Civil Action No. 1:25-cv-00334-BAH |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff agrees—as she must—that the NLRB exercises substantial executive power. It plays a "critical role" in settling labor disputes involving "workers, employers, and the broader public." Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 2, ECF No. 10. It "set[s] precedent"—*i.e.*, labor policy—for "American workplaces." *Id.* at 12. And it performs "important congressionally mandated work" that affects businesses across the country, and in turn the entire economy. Pl.'s Reply in Supp. of Mot. for Summ. J. & Mem. in Opp'n to Defs.' Cross-Mot. for Summ. J. ("Pl.'s Opp'n") at 12-13, ECF No. 27.

Precisely because of the power that the NLRB wields, Plaintiff insists that its leadership must be able to render its decisions "independent" of the President's direct supervision. Pl.'s Mot. at 9. But Article II makes a fundamentally different call. "Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020). Consistent with this unitary structure, and the system of democratic accountability it provides, the "general rule" is that the President has

1

"unrestricted removal power" over all Executive Branch officers. *Id.* at 215. Current precedent allows two exceedingly narrow exceptions, which turn on the power an officer holds. And for multimember agencies like the NLRB, Congress may impose conditions on the President's absolute removal authority only when—at most—the agency does not "wield substantial executive power." *Id.* at 218.

There is no plausible argument that the NLRB satisfies this standard. That is why Plaintiff mostly ignores it. Instead, Plaintiff's response rises (and falls) on a maximalist reading of *Humphrey's Executor*. But the Supreme Court has already rejected that reading by the letter: As *Seila Law* made clear, *Humphrey's* itself only tolerated "for-cause removal protections" for an agency that "was said not to exercise any executive power." *Id.* Because nobody thinks that describes today's NLRB—not even Plaintiff—this case is straightforward: The NLRB's leadership must be removable at-will, and directly accountable to the President whose borrowed power the Board wields. Plaintiff is thus right that this case is settled by binding case law; but Plaintiff goes wrong by skipping the last decade worth of cases.

This Court should thus take the Supreme Court at its word, and hold the tenure protections insulating the NLRB's members unconstitutional. But in all events, what this Court certainly should not do is take the unprecedented step of effectively ordering Plaintiff reinstated. Plaintiff identifies no binding authority where a federal court used its equitable power to compel the reinstatement of an officer. And she offers no sound basis for this Court to break new ground. To the contrary, the extraordinary remedy proposed by the Plaintiff would not only exceed this Court's Article III power, but would also severely intrude upon the President's Article II prerogatives. The proper remedy for an (allegedly) unlawful termination of a federal officer as here is backpay. It is not commandeering an executive agency and forcing the President to work alongside a subordinate in whom he has no trust.

**ARGUMENT**

**I.     The Removal Restrictions Insulating NLRB Members Are Unconstitutional.**

Plaintiff offers four bases for this Court to ignore what *Seila Law* made express. None works.

*First*, Plaintiff argues that structure is dispositive, and so long as a multimember commission has a "traditional" design, it is covered by *Humphrey's Executor*. Pl.'s Opp'n at 3. But that is very much not what *Seila Law* said when it clarified the bounds of *Humphrey's*. The Court was explicit that *Humphrey's* extends at most to "multimember agencies *that do not wield substantial executive power*." 591 U.S. at 218 (emphasis added); *see id.* at 239 (Thomas, J., concurring in part) (recognizing this limitation).

This was not a stray aside. The touchstone for the Supreme Court's Article II inquiry is the *power* that the insulated officer wields. Article II vests the whole of the executive power in the President and assigns him the solemn duty of taking care that the laws are faithfully executed. U.S. Const., Art. II, §§ 1, 3. Ultimately, the President is accountable to the American people for how he performs his duties. That "line[] of accountability" is blurred when those subordinates can wield the President's power without having to answer to him. *United States v. Arthrex*, 594 U.S. 1, 16 (2021). That is all why the *Morrison* exception extends to only those with "limited duties and no policymaking or administrative authority." *Seila Law*, 591 U.S. at 218. And it is why the Court focused extensively on the power a federal agency possesses when discussing the bounds of *Humphrey's*. *Id.* at 215-18.

The "logic" of these exceptions "does not apply" to an agency that wields substantial executive power. *Id.* at 219. Once an agency has the power to make significant decisions shaping the rights and obligations of Americans, the constitutional calculus changes. In such cases, the President must be directly responsible for how subordinate officers wield "executive power on behalf of the President." *Arthrex*, 594 U.S. at 11. And such responsibility is only possible where the President's subordinates are removable at-will, not independent of his direction. *See Collins v. Yellen*, 594 U.S. 220, 256 (2021).

*Second*, turning from law to fact, Plaintiff argues that there is little difference between today's NLRB, and the FTC at issue in *Humphrey's*. Pl.'s Opp'n at 4-6. But this too runs headlong into *Seila Law*. "[W]hat matters" for defining the scope of the *Humphrey's* exception "is the set of powers the [*Humphrey's*] Court considered as the basis for its decision, not any latent powers that the agency may have had not alluded to by the Court." *Seila Law*, 591 U.S. at 219 n.4. And based on the Supreme Court's understanding in 1935, the FTC was akin to a "mere legislative or judicial aid," tasked mainly with "making reports and recommendations to Congress." *Id.* at 218. That is why the *Humphrey's* Court was able to say that the then-FTC took "no part of the executive power." 295 U.S. at 628.

In response, Plaintiff grasps for support in two places. Neither helps. For one, Plaintiff says that *today's* FTC wields substantial power. Pl.'s Opp'n at 4. But as just explained, this misses the point. *Humphrey's* turns on the powers that the Supreme Court understood the FTC to possess in 1935. For another, Plaintiff cites to a separate writing from Justice Kagan, who (in dissent) argued that the 1935 FTC was far more powerful than the majority was letting on. Pl.'s Opp'n at 4 (citing *Seila Law*, 591 U.S. at 286 n.10 (Kagan, J., concurring in part and dissenting in part)). But that writing is what *prompted* footnote four—and the Court's point that *Humphrey's* only cloaks those agencies that exercise powers no greater than those that were "considered as the basis for its decision" there (*e.g.*, "making investigations and reports to Congress" and "recommendations to courts"). 591 U.S. 215-16, 219 n.4.

*Third*, Plaintiff gestures to practice, arguing that the NLRB fits within the country's history and tradition. Pl.'s Opp'n at 2-3; *see* Am. Br. Const. Accountability Center, at 6-7. But this too is a non-starter. History and tradition can establish a rule of constitutional interpretation only when the historical record is considered, longstanding, and unbroken. *See, e.g.*, *The Pocket Veto Case*, 279 U.S. 655, 659 (1929). But Congress did not purport to create its first multimember "independent" agency until 1887. That alone cuts short Plaintiff's resort to history, because such a practice comes far too

4

late to provide reliable evidence of the original public meaning of Article II or the Constitution's separation of powers. *See, e.g.*, *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 36-37 (2022).

Even so, the NLRB proves a poor fit into this early history. Before the New Deal, Congress created only three relevant multimember agencies. None is analogous to the NLRB. In its initial form, the FTC (established 1913) was understood to have a narrow portfolio, and to exercise "no part of the executive power." *Humphrey's Executor*, 295 U.S. at 628. And the Court said much the same thing about the Interstate Commerce Commission (established 1887), *id.* at 624, whose "nature and functions" were substantially similar to those of the then-FTC, *PHH Corp. v. CFPB*, 881 F.3d 75, 186 (D.C. Cir. 2018) (Kavanaugh, J., dissenting); *see* Henry B. Hogue, Cong. Rsch. Serv., R47897, *Abolishing a Federal Agency: The Interstate Commerce Commission* 3-4 (2024) ("The ICC was not initially established with the level of authority and independence that it later achieved," and lacked "the power to enforce its own decisions and orders"). The Federal Reserve also presents a distinct analysis, since its "most important responsibility"—the administration of the money supply—is not a traditional "executive function." *Consumers' Research v. CPSC*, 98 F.4th 646, 657 (5th Cir. 2024) (Oldham, J., dissenting from denial of rehearing *en banc*); *see Seila Law*, 591 U.S. at 222 n.8 (discussing history of Federal Reserve).

The NLRB does not fit these molds, because it wields sizable core executive power—as the Government has already detailed. Def.'s Cross-Mot. for Summ. J. ("Def.'s Mot.") at 6-8, ECF No. 23. The NLRB has an extensive ability to set federal labor policy via individual adjudications—which is a basic exercise of executive power. *See City of Arlington v. FCC*, 569 U.S. 290, 305 n.4 (2013). It has independent litigating authority, allowing the Board to press interpretations of federal law in federal courts—even when those legal positions may well conflict with the positions of the Attorney General. *See Buckley v. Valeo*, 424 U.S. 1, 138-40 (recognizing that interpreting and enforcing law through litigation is an executive function). And the NLRB has meaningful rulemaking authority—what the Supreme Court has branded "the very essence of the execution of the law." *Collins*, 594 U.S. at 254.

5

*Fourth*, Plaintiff resorts to rhetoric. She says the Government is asking this Court to overturn *Humphrey's* from below, and to raze every independent agency in the process. Pl.'s Opp'n at 7-8. Not so. All the Government asks is this Court read *Humphrey's* the way *Seila Law* said it should be read: As dealing with an agency that did not exercise "any" executive power, and as not extending to agencies that wield "substantial executive power." *Seila Law*, 591 U.S. at 216-18. By contrast, Plaintiff urges this Court to brush aside recent Supreme Court precedent in favor of a maximalist (and rejected) reading of *Humphrey's*. Also, Plaintiff's concerns as to other agencies are premature. Different agencies present different considerations based on their statutes, power, history, and structure. Courts must take those challenges as they come, not in one fell swoop. *See Free Enter. Fund*, 561 U.S. at 507-08.

\*\*\*

The NLRB is a powerful agency. It exercises substantial executive power. By the letter and logic of *Seila Law,* the NLRB's leadership must be removable by the President at will. Bound by that precedent, this Court should hold that tenure protections insulating NLRB leadership are unlawful.

## II. Plaintiff Cannot Receive Reinstatement by Injunction.

Plaintiff "only" seeks a specific sort of injunction—one running to Chairman Kaplan, and "ordering him to provide [Plaintiff] with access to government facilities and equipment, and to refrain from taking any further action to obstruct her ability to carry out her duties." Pl.'s Opp'n at 9 (internal markings omitted). But as the Government explained, this Court lacks the power to order that relief, because it exceeds this Court's equitable authority under Article III, and impedes the President's prerogatives under Article II. As for remedy, Plaintiff raises three main points. None is persuasive.

*First*, Plaintiff disclaims that she is seeking any sort of "reappointment." Pl.'s Opp'n at 9. But that assertion does not survive the rest of her brief. As it stands now, Plaintiff has been fired from her position, and cannot exercise its authorities. The *entire reason* she is bringing suit is so that she can reassume her post and begin to wield its power again. *See* Pl.'s Opp'n at 12-13 (urging this Court to

6

issue an injunction so that the NLRB once again has a "quorum"). Whatever semantic distinction Plaintiff tries to press, the reality is that she is seeking a court order reinstating her to her position.

That is a problem. Foremost, this Court does not have the authority to order reinstatement of an executive officer (which all agree describes Plaintiff). Federal courts' equitable authorities are those traditionally available to a court sitting in equity at the Founding. *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318 (1999). This Court therefore may only award those equitable remedies that were "traditionally accorded by courts of equity"; it lacks "the power to create remedies previously unknown to equity jurisprudence." *Id.* at 319, 332. That holding alone forecloses Plaintiff's requested relief. "No principle of the law of injunctions, and perhaps no doctrine of equity jurisprudence, is more definitely fixed or more clearly established than that courts of equity will not interfere by injunction to determine questions concerning the appointment of public officers or their title to office." 2 James L. High, *Treatise on the Law of Injunctions* § 1312 (2d ed. 1880). Indeed, "[i]t is … well settled that a court of equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 124 U.S. 200, 212 (1888); *see also* Def.'s Mot. at 12-13 (collecting authorities).

Plaintiff does not dispute any of these points. Her only response is to fight the premise, and argue she does not seek "reappointment," but instead a remedy that "would allow her to return to her duly appointed office and resume carrying out her duties." Pl.'s Opp'n at 9. But the latter is the definition of the former. This Court's Article III bounds cannot be stretched by sophistic wordplay.

Related, Plaintiff does not engage with the separation of powers problems inherent in her requested relief. The President—and the President alone—has the power to appoint, remove, and supervise agency heads. That power is "conclusive and preclusive." *Trump v. United States*, 603 U.S. 593, 608-09 (2024). And as Plaintiff does not dispute, courts cannot issue a remedy that runs against the exercise of such a core executive power. *See, e.g.*, *Mississippi v. Johnson*, 4 Wall. 475, 501 (1867).

Plaintiff's requested injunction inevitably transgresses this limit, even though, as Plaintiff emphasizes, it technically runs only against a subordinate. Pl.'s Opp'n at 9-10. This because the effect of Plaintiff's injunction—forcing others to recognize Plaintiff as a member of the NLRB, despite the President having fired her—disables the President's otherwise conclusive power to remove an agency

7

head, and requires him to supervise a principal officer wielding his executive power against his will. In other words, Plaintiff's injunction "necessarily targets the President," because it necessarily limits his exercise of his own Article II authority. *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *13 n.2 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting). That is not something this Court can do.

Contrary to Plaintiff's suggestion, this does not collapse remedies with the merits. Pl.'s Opp'n at 9. Even if this Court were to conclude Plaintiff's removal was unlawful, that would not entitle her to the specific equitable remedy that she seeks here. In other words, even if the President violated a statute by firing Plaintiff (and he did not), it does not follow that Plaintiff is entitled to *reinstatement* rather than some other remedy. Rather, as the Government cataloged, the traditional remedy in these sorts of cases is backpay. Def.'s Mot. at 12-13. Plaintiff cites no case where a federal court issued a final judgment ordering reinstatement of a principal officer. Not one. That lack of historical precedent is perhaps the "most telling indication" that Plaintiff asks the Court to walk a path the Constitution does not permit. *Free Enter. Fund*, 561 U.S. at 505.

*Second*, turning to irreparable harm, Plaintiff insists that her injuries extend beyond her salary. But her arguments fall short. Plaintiff states that she has suffered irreparable harm since the action taken against her was "nakedly illegal." Pl.'s Opp'n at 10. But that is a merits point; whether an action was clearly unlawful or closely unlawful has no bearing on whether a harm is irreparable. Additionally, Plaintiff says that she will lose the ability to carry out the "duties Congress has assigned to her." *Id.* at 11. But in every similar case, the fired officer was unable to perform his or her job for the duration of the suit. To date, such an argument has never carried the day. Def.'s Mot. at 14 (collecting cases holding that loss of employment is not irreparable harm). And Plaintiff does not even attempt to explain why the analysis should be any different here, just because Congress created her position.

*Third*, Plaintiff argues that the remaining equitable factors cut in her favor, because until she is reinstated there will be widespread "uncertainty" as to the NLRB's present capabilities and function. ECF 27, at 12. But that gets things precisely backwards. Plaintiff asks this Court to order her return to a position from which has been fired, and to empower her exercise the authorities of that office as if never terminated. If the Court granted this unprecedented request, for the duration of this litigation,

every action Plaintiff takes for the NLRB will be under a heavy cloud of illegitimacy. And if the D.C. Circuit or Supreme Court later reverses this Court's judgment, it will throw into doubt (at minimum) months of actions taken by the NLRB. If the public interest turns on mitigating confusion and promoting reliability—as Plaintiff contends—this cut decisively against the remedy Plaintiff seeks.

## CONCLUSION

For these reasons, the Court should grant Defendants' cross-motion for summary judgment, deny Plaintiff's motion for summary judgment, and enter summary judgment in favor of Defendants.

Dated: February 28, 2025

Respectfully submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*

CHRISTOPHER R. HALL
*Assistant Branch Director*

HARRY S. GRAVER
*Counsel to Acting Assistant Attorney General*

/s/ *Madeline M. McMahon*
MADELINE M. MCMAHON
(DC Bar No. 1720813)
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 451-7722
Email: madeline.m.mcmahon@usdoj.gov

*Counsel for Defendants*